UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER LEE LONG,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

    Defendant.

CASE NO. 11cv5746-RBL-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: June 15, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (<u>see</u> ECF Nos. 11, 12, 13).

The ALJ in this matter did not commit harmful error when he found that plaintiff's left humeral malformation was not a severe impairment. Although the ALJ committed harmless error during this determination, plaintiff has not demonstrated that any

functional limitation was rejected improperly by the ALJ when making the determination regarding plaintiff's residual functional capacity or that any subsequent step in the sequential disability evaluation process was not supported by substantial evidence in the record as a whole. Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, JENNIFER LEE LONG, was twenty-two years old on her alleged date of disability onset of January 10, 2007 (Tr. 15, 138). Plaintiff has at least a high school education (see Tr. 24). Between 2002 and 2006, she worked for Godfather's Pizza, Victoria's Secret/The Limited, and Jamba Juice (see Tr. 145-47). However, plaintiff did not work full time, and with reference to her application for supplemental security income, she had "no past relevant work" (Tr. 24).

Plaintiff "was involved in a motor vehicle accident in January 2007 in which her discs from T11 through L2 were fractured" and her left arm was broken (Tr. 18). Plaintiff "underwent spinal fusion surgery of these discs with metal hardware" (id.). Plaintiff also suffered from a severe (MRSA) infection requiring three or four subsequent operations (Tr. 428).

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income on November 19, 2008 (Tr. 15, 138-44). Her application was denied initially and following reconsideration (Tr. 55-58, 62-63). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on August 13, 2010 (Tr. 31-52).

On September 21, 2010, the ALJ issued a written decision denying plaintiff's application, finding that plaintiff had the severe impairment of "status-post lumbar fusion" but was not disabled pursuant to the Social Security Act (Tr. 12-26).

On July 15, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 1). On November 22, 2011, defendant filed the sealed administrative record ("Tr.") regarding this matter (see ECF Nos. 9, 10). In plaintiff's Opening Brief, plaintiff challenges the ALJ's finding that plaintiff's left humeral malunion was not a severe impairment and the ALJ's subsequent consideration of plaintiff's symptoms resulting from this alleged severe impairment (see ECF No. 11, p. 1).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. Molina v. Astrue,

2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46 (9th Cir. April 2, 2012) (Dock. No. 10-16578); see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-55 (9th Cir. 2006).

## DISCUSSION

1. <u>The ALJ did not commit harmful error when he found that plaintiff's left humeral malformation was not a severe impairment</u>.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen, supra, 80 F.3d at 1290 (citations omitted).

Here, the ALJ found that plaintiff had the severe impairment of status-post lumbar fusion, therefore, step two of the sequential disability evaluation process was resolved in plaintiff's favor (see Tr. 17). However, the ALJ found that plaintiff's left humeral malunion was not a severe impairment (see Tr. 18).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying [and] handling."

20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); see also Slayman v. Astrue, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146.

Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'"

Bowen, supra, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520) ("Plaintiff failed to adduce medical evidence that would support a finding that he was precluded from engaging in basic work activities for a continuous twelve-month period, a fatal omission").

However, the "severity regulation does not change the settled allocation of burdens of proof in disability proceedings . . . . the [defendant Commissioner] bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." Bowen, supra, 482 U.S. at 146 n.5. Here, steps one through four did not lead to a finding of not disabled, and this matter proceeded to a determination of plaintiff's residual functional capacity and to the subsequent step five determination that plaintiff was able to perform work available in the national economy (see Tr. 17-24).

The ALJ included the following analysis in his written decision regarding plaintiff's alleged severe impairment of left humeral malunion:

> The record also shows that the claimant's left arm was broken in the January 2007 motor vehicle accident. At the hearing, the claimant testified that she is unable to use her left arm to pick up her young children. In April 2009, orthopedic physician, Alan Thomas, MD examined the claimant's left arm and reviewed two x-ray images. Dr. Thomas noted that while there was a malunion of the humeral bone, it was a well-healed fracture and it was likely not the cause of the claimant's reported pain, and ordered an EMG. The record is notably absent of a follow-up EMG, and in subsequent records, the claimant does not refer to any pain or functional limitations in her left arm.

> Accordingly, the claimant's left arm pain, status-post fracture, is a nonsevere impairment.

(Tr. 18).

First, the Court notes that the ALJ's finding that "in subsequent records, the claimant does not refer to any pain or functional limitations in her left arm" (id.) is not accurate. On September 3, 2009, plaintiff's treatment records indicated that she sought a second opinion regarding her arm pain because Dr. Thomas would not do surgery (see Tr. 457).

Dr. Thomas assessed that plaintiff suffered from left "upper extremity pain with a left humeral malunion" (Tr. 427). Regarding Dr. Thomas's plan on how to deal with plaintiff's pain with a humeral malunion, he indicated his opinion that "addressing the humeral malunion would [not] improve [plaintiff]'s pain" (id.). Dr. Thomas also indicated that some of plaintiff's pain "may involve nerve etiology" (id.).

Regarding the ALJ's reliance on Dr. Thomas's opinion, Dr. Thomas's opinion does not demonstrate conclusively that plaintiff's left humeral malunion was not a severe impairment. However, it also does not demonstrate conclusively that plaintiff's humeral malunion was a severe impairment, and it is plaintiff's burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity. Ultimately, it is plaintiff's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" See Bowen, supra, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing*

Mathews, supra, 424 U.S. at 336); 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a).

Plaintiff has not directed the Court to any evidence other than plaintiff's testimony, see infra, that suggests that her left humeral malunion had "'more than a minimal effect on [her] ability to work.'" See Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert, supra, 841 F.2d at 306). Therefore, plaintiff has not met her step two burden to demonstrate that this impairment was severe. See Bowen, supra, 482 U.S. at 146; see also Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert, supra, 841 F.2d at 306).

Even if the ALJ incorrectly determined that plaintiff's left humeral malunion was not a severe impairment, there was no harmful error. See Burch v. Barnhardt, 400 F.3d 676, 682 (9th Cir. 2005) (per curiam) ("Assuming without deciding that this omission [to find an impairment severe] constituted legal error, it could only have prejudiced [plaintiff] in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor"). Here, plaintiff does not reply to defendant's argument that plaintiff "does not claim any specific limitations were excluded from the RFC finding as a result of the ALJ not labeling plaintiff's left arm pain, status post fracture as a severe impairment" (Response, ECF No. 12, p. 5).

Plaintiff has not argued that her left humeral malunion was a listing level impairment (step three). In addition, here, just like the plaintiff in Burch, plaintiff "has not pointed to any evidence of functional limitations" as a result of her left humeral malunion that would have impacted the ALJ's analysis. See id. at 683-84.

Dr. Thomas does not appear to have opined that plaintiff's left humeral malunion resulted in any particular functional limitations on plaintiff's ability to perform work related activities. In fact, Dr. Thomas opined that plaintiff had "gone on to have excellent healing of the humerus" (Tr. 427). The Court notes that he also indicated his objective observation that plaintiff demonstrated "good strength of the extensors of the left wrist . . . . [and] acceptable motion of the left elbow as well as acceptable motion of the left shoulder" (id.).

As Dr. Thomas noted plaintiff's normal strength and range of motion, it appears from the record that the only potential limitation mentioned by Dr. Thomas regarding plaintiff's left humeral malunion was due to plaintiff's pain. The ALJ specifically discredited plaintiff's testimony and credibility regarding the severity of her alleged symptoms, and plaintiff has not challenged this finding by the ALJ (see Tr. 19-21). In addition, even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)).

Although plaintiff argues that "the ALJ obviously made no associated residual functional capacity findings at step 4" regarding plaintiff's left humeral malunion, plaintiff fails to inform the Court which particular limitation the ALJ failed to consider properly (see Opening Brief, ECF No. 11, p. 5). See also Burch, supra, 400 F.3d at 684 (plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her [allegedly improperly considered diagnosis] that the ALJ

failed to consider"). As in Burch, here, there does not appear to be any evidence in the record of any functional limitations resulting from plaintiff's left humeral malunion that the ALJ failed to consider properly. See Burch, supra, 400 F.3d at 684.

Similarly, although plaintiff argues that "it is logical to form a judgment that the plaintiff's left humeral malunion imposes more than a 'minimal effect' on basic work activities" (Opening Brief, ECF No. 11, p. 5), it is plaintiff's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" Bowen, supra, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews, supra, 424 U.S. at 336); 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a). If it is so logical for such a judgment to be formed, one would expect to find such an opinion in the record from plaintiff's examining doctors. There is none.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ did not commit harmful error in finding that plaintiff's left humeral malunion was not a severe impairment. Plaintiff has not demonstrated that this impairment had more than a minimal effect on her ability to work. The Court also finds that even if the ALJ's step two finding regarding plaintiff's humeral malunion was erroneous, there was no harmful error.

2. The ALJ's finding regarding plaintiff residual functional capacity ("RFC") is based on substantial evidence in the record as a whole.

The ALJ indicated that he had "considered all symptoms" when making the determination regarding plaintiff's residual functional capacity and plaintiff has not

directed the Court to any evidence in the record demonstrating otherwise. Although the ALJ erred when determining that plaintiff failed to mention arm pain subsequent to the evaluation by Dr. Thomas, plaintiff has not indicated how she was prejudiced by this error.

Furthermore, even if plaintiff's left humeral malunion was a severe impairment, plaintiff has not demonstrated that she suffered from any functional limitation on her ability to work as a result of this impairment that was not included in plaintiff's residual functional capacity ("RFC"). The Court notes that the ALJ gave "substantial weight" to an examining doctor's opinion (Dr. Andrea Opalenik, D.O.) which the ALJ found generally to be "consistent with a light residual functional capacity" (Tr. 22). Plaintiff has not challenged this finding, or the ALJ's evaluation of other doctors' opinions in the record.

For the reasons stated and based on the record as a whole, the Court concludes that plaintiff has not demonstrated that any harm resulted from any errors in the ALJ's step two determination regarding plaintiff's severe impairments. Based on the relevant record, the Court also concludes that the ALJ's step three through step five findings, including the ALJ's finding regarding plaintiff's RFC, are based on substantial evidence in the record as a whole.

## CONCLUSION

The ALJ did not commit harmful error when making the determination that plaintiff's left humeral malformation was not a severe impairment. Plaintiff has not presented any evidence that any functional limitation on her ability to work based on this

impairment was disregarded improperly. Step two was resolved in plaintiff's favor, and the ALJ's findings regarding the remainder of the five-step sequential disability evaluation process are supported by substantial evidence in the record as a whole.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 15, 2012, as noted in the caption.

Dated this 22nd day of May, 2012.

J. Richard Creatura
United States Magistrate Judge